UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Leslie HENDRIETH,
Defendant–Appellant.

No. 89–3672
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 30, 1991.

Donald S. Modesitt, Tallahassee, Fla., for defendant-appellant.

Stephen S. Dobson, III, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and RONEY, Senior Circuit Judge.

## PER CURIAM:

Appellant, Robert Leslie Hendrieth, appeals his conviction and sentence for conspiracy to pass counterfeit Federal Reserve notes, in violation of 18 U.S.C. § 371, and for receiving counterfeit Federal Reserve notes with intent to pass them as genuine, in violation of 18 U.S.C. § 473. The jury returned a verdict of guilty on both counts on April 27, 1989. Appellant was sentenced on August 1, 1989 to thirty-three months imprisonment on each count, with sentences to run concurrently. Because we find no error in the district court proceedings, we affirm.

## FACTS

On February 24, 1989, Verbus Arthur Taylor arrived in Tallahassee, Florida with approximately $49,500 in counterfeit $10.00 Federal Reserve notes. Shortly after his arrival in Tallahassee, he met with the appellant, Robert Leslie Hendrieth, and asked if Hendrieth would accompany him to Canada. When Taylor showed Hendrieth the counterfeit money, Hendrieth offered to distribute the money in Tallahassee instead of accompanying Taylor to Canada. Hendrieth received all of the counterfeit money and made arrangements to sell the money in Tallahassee.

Hendrieth enlisted the aid of Moses McFadden, Jr. to assist him in finding buyers for the currency. Hendrieth ultimately negotiated with individuals from Gadsden County, Florida who agreed to purchase some of the counterfeit currency. Taylor, who was not involved in these meetings, held Hendrieth responsible for negotiating the sale and giving Taylor his percentage of the receipts.

One of the individuals at the meeting to negotiate the sale of currency contacted and agreed to cooperate with the police. A subsequent meeting between Hendrieth and the cooperating buyer ultimately led to Hendrieth's arrest, indictment, and conviction. $20,950.00 in counterfeit currency was recovered from Hendrieth's vehicle.

## DISCUSSION

Hendrieth raises five issues on appeal. First, during jury selection for his trial, the prosecution exercised three peremptory challenges, each to exclude a black juror. The jury selected had no black jurors. Hendrieth, who is black, challenges the prosecutor's use of peremptory challenges as a denial of Equal Protection.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that when, as here, the defendant establishes a prima facie case of discrimination, the prosecution must provide a specific and facially neutral explanation of its peremptory challenges. In this case, the district court excluded one juror because she was the sister-in-law of a defense witness, another because he admitted bias against the government, and a third because she was inattentive and rubbing and rolling her eyes during voir dire.

Thus, the prosecutor proffered a credible and nonracially motivated explanation for the exclusion of the three challenged jurors. The requirement enunciated in *Batson* having been satisfied, the district court properly overruled the defendant's objection to peremptory challenges.

■ Next, the defendant argues that the district court erred when it denied defense counsel's request to present hearsay evidence of statements made by a witness who invoked his Fifth Amendment right to remain silent. Defendant argues that he needs the testimony of Sandy Payne, an alleged drug-informant who, prior to Hendrieth's trial, was arrested on drug charges and who properly invoked his Fifth Amendment privilege against self-incrimination. Once Payne became unavailable, the defendant sought to introduce Payne's alleged exculpatory statements through the statements of Addys Walker. Walker claimed that he was in the federal courthouse looking for his attorney, who also was Hendrieth's counsel, when Payne, a stranger to Addys Walker, began a conversation with him while the two were sitting outside the courtroom on the day of Hendrieth's trial. Payne allegedly told Walker that, among other things, Payne and his family were drug dealers and that to avoid arrest, he had been cooperating with the government by setting up drug dealers and persons passing counterfeit money.

■ Statements made by a witness who is unavailable at trial which tend to exculpate a defendant may be admissible as a hearsay exception under Federal Rule 804(b) if (1) the declarant is unavailable; (2) the statements are against the declarant's penal interest; and (3) corroborating circumstances clearly indicate the trustworthiness of the statement. Fed.R.Evid. 804(b)(3); *United States v. Gossett*, 877 F.2d 901, 906 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1141, 107 L.Ed.2d 1045 (1990). "Unavailability," for purposes of the Rule, includes a declarant not testifying because of privilege. Fed.R.Evid. 804(a)(1); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978).

Under the "clearly erroneous" standard of review for failure to consider an element of admissibility under Rule 804(b)(3), *United States v. Bagley*, 537 F.2d 162, 166 (5th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977), this court finds no error in the district court's determination that no evidence existed to corroborate Walker's recitation of Payne's alleged story that he had been setting up people for the government. The district court also considered Walker's motive to misrepresent the matter, the character of the speaker, whether other people heard the out of court statement, the spontaneity of the statement, and the relationship between the speaker and the witness. The district court found Walker completely unworthy of belief and, as a result, was unable to determine what, if any, statements actually were made by Payne. *See United States v. Alvarez,* 584 F.2d 694, 701–02 (5th Cir.1978) (pursuant to 804(b)(3), the court should determine credibility primarily by analysis of the probable veracity of the in-court witness and the reliability of the out-of-court declarant). Payne's statements, thus, were properly excluded under the rules of evidence.

■ Third, Hendrieth claims that the district court erred by permitting the government to introduce evidence of statements alleged to have been made by the defendant while in custody and after the defendant had invoked his right to remain silent and to obtain the assistance of counsel. The district court, in a hearing held outside the presence of the jury, heard testimony of the arresting officer, Ray Jones, that he advised Hendrieth of his *Miranda* rights, and Hendrieth responded "Let's make a deal." Officer Walter Beck corroborated Jones' testimony. Both officers testified that Hendrieth volunteered additional information at the police department, stating that he was helping out a friend and had "screwed up." He repeated his statements, while on the telephone, within earshot of the police officers.

This court previously has held that statements made while in custody are not per se involuntary, *Martin v. Wainwright,* 770

F.2d 918 (11th Cir.1985), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986), and statements voluntarily made by the defendant after he has invoked his *Miranda* rights are admissible against him. *United States v. Ogueri,* 798 F.2d 452 (11th Cir.1986). When a defendant deliberately chooses to initiate or continue conversation, *Michigan v. Mosley,* 423 U.S. 96, 103–06, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313, 321–22 (1975), the statements violate neither the Fifth Amendment right against self-incrimination nor the Sixth Amendment right to counsel. *Smith v. United States,* 505 F.2d 824, 829 (6th Cir.1974). Considering all the facts and circumstances of the possible waiver by Hendrieth of his *Miranda* rights, we find that Hendrieth's statements were made voluntarily and were admissible on that basis.

■ Fourth, the defendant challenges the prosecutor's reference in closing argument to the defendant's failure to call certain witnesses or present evidence that he was not guilty. During closing argument the prosecutor stated that "the only witness the defense called was a police officer," and pointed to the defendant's failure to call additional witnesses. He commented that "[t]here has been no evidence presented that indicates that Robert Leslie Hendrieth is not guilty" and made similar statements regarding the lack of exculpatory evidence.

"The test for determining whether a prosecutor's comments warrant the granting of a new trial is (1) whether the remarks were improper and (2) whether they prejudicially affected substantial rights of the defendant's." *United States v. Vera,* 701 F.2d 1349, 1361 (11th Cir.1983). The prosecutor at Hendrieth's trial made no comment on the defendant's own failure to testify. His remarks were directed to the failure of the defense to counter or explain the evidence. *United States v. Watson,* 866 F.2d 381 (11th Cir.1989) (mistrial unnecessary when prosecutor commented on the failure of the defense to counter evidence presented by the government); *United States v. Bright,* 630 F.2d 804, 825 (5th Cir.1980); *United States v. Hartley,* 678

F.2d 961 (11th Cir.1982), *reh'g denied,* 688 F.2d 852, *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). For these reasons, we find no error in the failure of the district court to declare a mistrial based upon prosecutor's remarks to the jury.

■ Finally, Hendrieth argues that his sentence is not in accordance with the Sentencing Guidelines. He challenges the court's characterization of him as an "organizer" or "leader" of the criminal activity and the resulting increase in his sentence under the guidelines. U.S.S.G. § 3B1.1(a). Hendrieth also challenges the court's upward adjustment for criminal activity involving more than minimal planning or a scheme to defraud more than one victim. U.S.S.G. § 2F1.1(b)(2).

The guidelines commentary provides that in considering the role of the defendant as a "leader" or "organizer," the court should consider, among other things, "the exercise of decision making authority, ... the recruitment of accomplices, ... the degree of participation in planning or organizing the offense, [and] the nature and scope of the illegal activity." U.S.S.G. § 3B1.1, comment. (n. 3). "More than minimal planning" means "more planning than is typical for commission of the offense in simple form." It exists in "any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1, comment. (n. 1f).

We find no basis in the record for appellant's challenge of his sentence. Hendrieth suggested to Taylor that the counterfeit money be distributed in Tallahassee and made arrangements to sell a substantial amount of currency in Tallahassee; he had complete responsibility for negotiating its sale. Hendrieth enlisted the aid of McFadden as an accomplice to carry out his plan. This court has recognized that "[t]he sentence imposed is committed to the discretion of the trial court and, so long as the sentence falls within the range provided by statute, generally will not be reviewed on appeal." *United States v. Funt,* 896 F.2d 1288, 1298 (11th Cir.1990). On these facts,

752

it is clear that Hendrieth's sentence falls within the statutory guidelines for sentencing.

■ Finally, Hendrieth emphasizes that a comparison of the offenses of Hendrieth and his co-defendant, McFadden, shows that although both participated almost equally in the offense, Hendrieth's sentence under the guidelines was substantially greater than McFadden's sentence. However, this court has rejected as "frivolous" challenges to sentencing because a co-defendant received a less severe penalty. *United States v. Allen*, 724 F.2d 1556, 1558 (11th Cir.1983), *reh'g denied*, 732 F.2d 944 (1984). His sentence will not be disturbed on appeal.

In light of the foregoing, the conviction and sentence imposed against Robert Leslie Hendrieth is AFFIRMED.